UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JOSE CASTENADA,                          :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/19/09

                                         :
                                         :
                          Petitioner,    : 07 Civ. 5923 (GBD) (THK)
                                         : S3 03 Cr. 731 (GBD)
          -against-                      :
                                         :       REPORT AND
                                         :    RECOMMENDATION
UNITED STATES OF AMERICA,                :
                                         :
                                         :
                          Respondent.    :
----------------------------------------X

**TO:  THE HON. GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Petitioner Jose Castenada pled guilty, on January 5, 2005, to
two counts of violating 21 U.S.C. § 846 (conspiracy to distribute
one kilogram or more of heroin, and distribution or possession with
intent to distribute 100 grams or more of heroin), and was
sentenced to 135 months of imprisonment, followed by a five-year
term of supervised release for the first count and a four-year term
of supervised release for the second count, to be served
concurrently.  On June 21, 2006, the Second Circuit affirmed
Petitioner's conviction.  See United States v. Castenada, 191 Fed.
Appx. 15, 17 (2006).  Petitioner now seeks relief pursuant to 28
U.S.C. § 2255, on the grounds of multiple alleged misapplications
of the United States Sentencing Guidelines, several statutory and
Constitutional claims, and ineffective assistance of trial counsel.
This habeas corpus action was referred to this Court for a Report
and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (c)

1

and Rule 72.1(a) of the Local Civil Rules of the Southern District of New York. For the reasons that follow, the Court recommends that the Petition be dismissed with prejudice.

## BACKGROUND

After being observed preparing to engage in drug transactions during a federal drug surveillance operation, Petitioner was indicted on narcotics charges by Respondent the United States (the "Government") on June 10, 2003. (See Indictment, United States v. Contreras, et al., No. 03 Cr. 731 (GBD) (S.D.N.Y. June 10, 2003).) Petitioner was ultimately charged with one count of conspiracy to distribute one kilogram or more of heroin, and one count of distributing or possessing with the intent to distribute one hundred grams or more of heroin. (See Superseding Indictment, No. 03 Cr. 731 (GBD) (S.D.N.Y. Sept. 14, 2004).)

## I.    The Plea

Petitioner's trial was scheduled to begin on January 10, 2005. However, Petitioner chose to plead guilty to both counts against him on January 5. On that date, the District Court (Daniels, J.) conducted a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (See Plea Hr'g Tr., Jan. 5, 2005 ("Tr. 1").) An interpreter was present to translate for Petitioner, whose first language is Spanish. At the outset of the hearing, the Court asked Petitioner, "Can you understand the interpreter clearly?" (Id. at 3.) Petitioner responded, "Yes." (Id.) The

2

Court asked the interpreter whether she could understand Petitioner, and she too answered "Yes." (Id.) The Court then inquired as to whether Petitioner had discussed the charges against him with his attorney, and whether he understood the nature of those charges. Petitioner responded affirmatively to both questions. (See id. at 8.)

The Court went on to question Petitioner about his conduct in committing the offenses. Petitioner explained that in 2003 he conspired with others to sell a kilogram of heroin, and also possessed with the intent to sell more than 100 grams of heroin. He took steps in furtherance of these activities in Manhattan. (See id. at 13-14.)

## II. Presentence Submissions

Following the plea hearing, the Probation Office prepared a Presentence Investigation Report (the "Report") to determine Petitioner's sentencing range under the United States Sentencing Guidelines (the "Guidelines"). (See Presentence Report for Jose Castaneda, dated Apr. 4, 2005 ("PSR"), at 17-26.) The Report calculated a base criminal offense level of thirty-two for the two counts against Petitioner, based on the quantity of heroin involved, pursuant to § 2D1.1(c)(4) of the Guidelines. Because Petitioner had pleaded guilty, thereby "demonstrat[ing] acceptance of responsibility for his offense[s]," U.S.S.G. § 3E1.1(a), the Probation Office found him eligible for a reduction of two levels,

3

resulting in a total offense level of thirty. (See PSR ¶ 48.)[1] However, the Probation Office did not find Petitioner eligible for the additional one-level reduction authorized by § 3E1.1(b) "upon motion of the government" in cases where the defendant has "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." U.S.S.G. § 3E1.1(b).

The Probation Office assigned Petitioner eight criminal history points arising from three prior criminal convictions: (i) one point for a 1996 conviction for possession of cocaine in state court in Florida, for which Petitioner was sentenced to two years of probation, the terms of which Petitioner violated, leading to the issuance of an arrest warrant (see PSR ¶¶ 54-56); (ii) three points for a 1999 conviction for sale of a controlled substance in state court in Nevada, for which Petitioner received a sentence of twelve to thirty-six months' imprisonment after violating his probation (see id. ¶¶ 57-59); and (iii) two points for a 1998 conviction for possession of a drug not introduced into commerce, also in Nevada, for which he received a sentence of ninety days' imprisonment following his probation violation (see id. ¶¶ 60-62).

---

[1] Previously, in a letter provided to Petitioner pursuant to United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991), the Government had argued that Petitioner was not entitled to any offense level reduction pursuant to § 3E1.1, because he had not admitted guilt in time to allow the Government to avoid preparing for trial. (See Letter from Steven D. Feldman, Esq., Jan. 4, 2005 ("Pimentel Ltr."), at 2.)

Finally, the Report added two criminal history points because Petitioner was arrested for the instant charges while still on probation for the Florida offense. (See id. ¶ 67.) Altogether, Petitioner's eight prior criminal history points placed him in Criminal History Category IV. (See id. ¶ 105.)

Combining this determination with Petitioner's total offense level of thirty, the Report set a sentencing range of 135 to 168 months' imprisonment under the Guidelines. (See id. ¶ 105.) The Probation Office recommended a sentence of 145 months' imprisonment. (See id. at 24.)

On April 29, 2005, Petitioner sent a letter to the District Court seeking an additional one-level decrease in his offense level for acceptance of responsibility under § 3E1.1(b). He asserted that he delayed pleading guilty because his co-defendants had pressured him to do so, and because of indecision about whether to also plead guilty to pending criminal charges in Nevada. The desired reduction in offense level would have yielded a sentencing range of 121 to 151 months' imprisonment. Petitioner also cited the Supreme Court's then-recent decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), which rendered the Guidelines advisory rather than mandatory. The Government responded that Petitioner was not eligible for the relief he sought. Because Petitioner did not decide to plead guilty until two business days before trial, the Government explained that it

5

was unable to avoid trial preparation, and § 3E1.1(b) therefore did not apply.

After the Government's response, Petitioner submitted an additional letter to contest receiving two criminal history points for violating his probation in Florida. He argued that the two-year term of his probation had expired, and that Florida state authorities did not enforce the outstanding warrant or charge him with a violation of his probation following subsequent arrests. Finally, Petitioner proposed that his sentence should be 120 months' imprisonment, because one of his co-defendants received a prison sentence of eighty-four months.

## III. The Sentencing Hearing

The District Court held a sentencing hearing for Petitioner on May 25, 2005. Petitioner indicated that his only objections to the Report related to the two issues raised in his letters, on which the Court proceeded to hear argument from Petitioner and the Government. The Court ruled against Petitioner on both sentencing issues. It found that while Petitioner was entitled to the offense level reduction authorized in § 3E1.1(a), he did not qualify for an additional reduction pursuant to § 3E1.1(b). "[T]his is the kind of case," the Court stated, in which "a defendant . . . should get the 2 points for acceptance of responsibility but has not appropriately earned the one point . . . for . . . plead[ing] guilty in a timely manner before the government has to expend its

6

resources . . . to be prepared for trial." (Id. at 17.) As for whether Petitioner deserved criminal history points for violating his probation, the Court acknowledged that the circumstances of Petitioner's violation were unusual, because authorities in Florida had subsequently apprehended Petitioner on other charges but had not informed him that he had violated his probation or that he had outstanding obligations. (See id. at 10, 17.) However, the Court observed that the warrant for Petitioner's arrest was still outstanding, and that Petitioner did not complete the terms of his probation. (See id. at 17-18.) Therefore, the Court concluded, Criminal History Category IV, with a resulting guidelines range of 135 to 168 months' imprisonment for an offense level of 30, was appropriate. (See id. at 18.)

The Court then sentenced Petitioner to a term of 135 months' imprisonment, to be followed by five years of supervised release. (See id. at 25-26.) The Court determined that this sentence was reasonable "given all the factors to be considered in [18 U.S.C. § 3553(a)]." (Id. at 25.) Specifically, the Court accounted for the fact that Petitioner had "almost continually been involved in criminal activity" since entering the country in 1995. (Id. at 26.) However, the Court also conceded that Petitioner's failure to satisfy outstanding probation obligations could have "obviously" been addressed by authorities in Florida at an earlier time. (See id.) The Court thus selected a sentence at the low end of the

7

applicable range under the Guidelines.    In addition, the Court observed, "[e]ven if I were to have accepted the guideline range as urged by the defense, 135 months would fall within the mid-range of that guideline range that was urged upon the [C]ourt."    (Id.)

## IV.   Petitioner's Appeal

On direct appeal, Petitioner attacked his sentence as unreasonable on two grounds. First, he contended that the District Court "miscalculated his . . . Guidelines range by awarding him two rather than three points for acceptance of responsibility" under U.S.S.G. § 3E1.1. United States v. Casteneda, 191 Fed. Appx. 15, 17 (2d Cir. 2006). The Second Circuit disagreed. It found that Petitioner "failed convincingly to show that he satisfied [the timely] notice requirement" of § 3E1.1(b), and thus did not qualify for the additional one-level reduction pursuant to that section. Id. at 17.

Second, while Petitioner conceded that the calculation of Criminal History Category IV was "technically" correct for him, he submitted "that the District Court's failure to grant him a horizontal departure to Category III resulted in a sentence that was substantively unreasonable." See id. at 17-18. The Second Circuit rejected this argument as well. It concluded that the District Court did not unreasonably decline to grant a horizontal departure from Criminal History Category IV to Category III, and further held that Petitioner's ultimate sentence was not

8

unreasonable. See id. at 18. The Second Circuit observed, "[t]he 135-month sentence is only fifteen months higher than the ten-year minimum mandated by statute on [Petitioner's] conspiracy charge of conviction, without regard to the recidivism concern represented by his criminal history." Id. at 18.

V.   The Petition

Petitioner filed the instant Petition on June 1, 2007. (See Petition, dated June 1, 2007 ("Pet."); Memorandum of Points and Authorities in Support of Petition, dated June 1, 2007 ("Pet.'s Mem.").) He also filed a supplemental submission on August 9, 2007. (See Petitioner's Supplemental Submission, dated August 9, 2007 ("Pet.'s Supp.").) While the nature of Petitioner's claims is often unclear, the Court has attempted to interpret them as favorably as possible to him. Construing Petitioner's allegations liberally, he contends that (i) the District Court miscalculated his offense level under the Guidelines (see Pet. at 5; Pet.'s Mem. at 8-9); (ii) the District Court overstated his criminal history under the Guidelines (see Pet.'s Mem. at 9-11); (iii) his earlier state offenses should not have been considered in calculating his sentence under the Guidelines (see Pet.'s Mem. at 10-11); (iv) the District Court miscalculated the quantity of usable drugs he possessed for purposes of applying the Guidelines (see Pet.'s Supp.); (v) his sentence otherwise does not serve the objectives of the Guidelines (see Pet. at 6); (vi) the District Court misapplied

9

the sentencing considerations contained in 18 U.S.C. § 3553(a) (see Pet.'s Mem. at 17-20); (vii) the Guidelines are unconstitutional (see Pet.'s Mem. at 12-14); and (viii) in light of international law, 18 U.S.C. § 3553 should be interpreted to disallow any consideration of the Guidelines, even in an advisory capacity (see id. at 21-27). Petitioner further alleges that he received ineffective assistance of counsel because his attorney did not secure competent translation services to allow him to substantively participate in his defense. (See Pet. at 5).

## DISCUSSION

### I. Sentencing Claims

#### A. Legal Standard

Section 2255 authorizes a court to vacate or set aside a sentence where the sentence "was imposed in violation of the Constitution or laws of the United States," where the court was "without jurisdiction to impose such sentence," where "the sentence was in excess of the maximum authorized by law," or where the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Other than "constitutional error," the only proper basis for a collateral attack is "an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted); see

10

Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962) (explaining that § 2255 affords relief for "omission[s] inconsistent with the rudimentary demands of fair procedure").

It is well-established that "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998) (citation and internal quotation marks omitted); accord Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.") (quoting United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)); United States v. Vitrano, No. 07 Civ. 462 (JGK), 05 Cr. 1264 (JGK), 2007 WL 2850515, at *1 (S.D.N.Y. Sept. 28, 2007) (§ 2255 claims regarding sentence and plea agreement deemed procedurally barred because they were not raised on direct appeal). Thus, in most circumstances, a petitioner is precluded from raising claims in a § 2255 proceeding not asserted on direct appeal, unless he can demonstrate "cause" for his procedural default of the claim and "prejudice" resulting therefrom, or that a miscarriage of justice would result if his claim is not heard. See Bousley, 523 U.S. at 622, 118 S. Ct. at 1611; Rosario, 164 F.3d at 729; see also United States v. Pipitone, 67 F.3d 34, 38-39 (2d. Cir. 1995) (discussing "unusual case[s]" in which a court "might be inclined to temper the rigor of th[e cause] rule," such as where attorneys for both sides misapprehend the governing law). Especially for "challenges to the

11

application of the . . . Guidelines," which are neither constitutional nor jurisdictional, courts may not consider such claims "raised for the first time in a § 2255 motion" absent the demonstration of a "complete miscarriage of justice." Graziano, 83 F.3d at 590; see United States v. Wisch, 275 F.3d 620, 625 (7th Cir. 2001) ("Allegations that the district judge misapplied the sentencing guidelines are not reviewable under § 2255.").

"To satisfy the 'cause' requirement, the petitioner must show circumstances 'external to the petitioner, something that cannot be fairly attributed to him.'" Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 508 (S.D.N.Y. 2005) (quoting Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) and Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original)). Alternatively, to demonstrate that a "complete miscarriage of justice" will occur if a defaulted claim goes unreviewed, a petitioner may submit evidence that he is "actually innocent" of the crime for which he was convicted. Bousley, 523 U.S. at 623, 118 S. Ct. at 1611. In the context of § 2255, a petitioner may also rely on a "subsequent change in the law" that results in imprisonment for an act that is no longer criminal. Brennan v. United States, 867 F.2d 111, 117 (2d Cir. 1989); see Edwards v. United States, 564 F.2d 652, 654 (2d Cir. 1977) (citing, as an example of a complete miscarriage of justice, "subsequent decisions [that] have made it clear that the petitioner committed no federal offense").

12

The Second Circuit has held that "section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." United States v. Becker, 502 F.3d 122, 127 (2d Cir. 2007) (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)). Similarly to the criteria for considering defaulted claims, "[r]econsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (quoting Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980)).

B.    Application to Petitioner's Claims

1.    Sentencing Guidelines Claims

Petitioner's first two claims as to why the District Court misapplied and misinterpreted the Guidelines, and thereby sentenced him unreasonably, replicate issues presented on direct appeal. Petitioner states that he is "reiterat[ing]" his objection to being denied the additional one-level reduction in his offense level pursuant to § 3E1.1(b). (See Pet.'s Mem. at 8-9.) He does not articulate any new basis for entitlement to a § 3E1.1(b) reduction. Petitioner thus effectively concedes that he is duplicating his first argument on appeal, which sought reversal on exactly the same grounds. Because this claim was "raised and considered" on direct appeal, see Becker, 502 F.3d at 127, and Petitioner cites no new

13

law under which he is entitled to be exonerated, see Sanin, 252 F.3d at 83, his claim cannot be re-litigated pursuant to a § 2255 petition.

Similarly, as he did on direct appeal, Petitioner faults the District Court for declining to exercise its discretion to depart horizontally from Criminal History Category IV to Category III.[2] (See Pet.'s Mem. at 8-9.) As explained above, the Second Circuit rejected Petitioner's challenge to the District Court's refusal to grant a horizontal departure, and further determined that Petitioner's 135-month sentence was not unreasonable. See Castenada, 191 Fed. Appx. at 18. Because Petitioner's second claim was also reviewed and repudiated by the Second Circuit, it cannot be reconsidered by this Court. See Becker, 502 F.3d at 127.

Petitioner's remaining claims related to misapplication of the Guidelines, however, were raised neither with the District Court nor on direct appeal. First, Petitioner disputes the consideration of his prior offenses in calculating his sentence. He asserts that

---

[2] Petitioner protests that the eight criminal history points assigned to him "over-represented relatively minor and non-violent behavior," because his "prior arrests resulted from minor drug crimes of the kind of petty criminality associated with a poor addict's attempt to acquire drugs, or money for the purchase of drugs." (Pet.'s Mem. at 10-11.) These allegations refer to § 4A1.3(b)(1) of the Guidelines, which authorizes a horizontal departure where the designated Criminal History Category "over-represents the seriousness of the defendant's criminal history." See, e.g., United States v. Chambers, No. S2 98 Cr. 1316 (RWS), 2001 WL 96365, at *3 (S.D.N.Y. Feb. 2, 2001) (imposing sentence following conviction).

his earlier crimes "do not count" for determining his Criminal History Category. (See Pet.'s Mem. at 12.) Second, Petitioner complains that the District Court failed to calculate the "actual amount of usable drugs" that he possessed and conspired to distribute, which he argues is required under § 2D1.1 of the Guidelines. (See Pet.'s Supp.) Third, he makes a blanket assertion that his sentence does not comport with certain "objectives" of the Guidelines that he does not identify.[3] (See Pet. at 6.)

The Court cannot consider "challenges to the application of the Guidelines raised for the first time in a § 2255 motion" unless Petitioner can show that "a complete miscarriage of justice" would otherwise result. Graziano, 83 F.3d at 590. "A sentence within the Guidelines . . . cannot be a 'complete miscarriage of justice.'" Werber v. United States, 149 F.3d 172, 177 n.4 (2d Cir. 1998) (quoting United States v. Springs, 988 F.2d 746, 747 (7th Cir. 1993)). In this case, Petitioner's 135-month sentence falls within the Guidelines range for an offense level of thirty at Criminal History Category IV, which is 135 to 168 months' imprisonment, as well as the range that he urged upon the District Court based on his desired horizontal departure to Category III, which was 121 to 151 months' imprisonment. See U.S.S.G. Ch. 5,

---

[3] This claim perhaps overlaps with Petitioner's contention that the District Court failed to apply the statutory sentencing considerations in 18 U.S.C. § 3553(a), which the Court addresses below.

15

Part A - Sentencing Table (2008).  In fact, Petitioner's sentence
would even have been at the upper end of the applicable range had
he  also  prevailed  in  arguing  that  he  merited  one  additional
offense-level reduction: for offense level twenty-nine at Category
III, the Guidelines set a sentencing range of 108 to 135 months'
imprisonment.  See id.  Accordingly, Petitioner cannot establish a
"complete miscarriage of justice," and his claims are not properly
before this Court.     See Gammarano v. United States, No. 97 Civ.
1734 (SJ), 1998 WL 827424, at *2 (E.D.N.Y. Nov. 30, 1998) ("[The
petitioner's] sentence is not outside the 41 to 51 month guideline
range that would have applied had the Court not included the
two-level enhancement in its calculation. . . . [A]bsent any other
allegation of defect, the circumstances in this case clearly do not
amount to a 'complete miscarriage of justice.'").

     Furthermore, even assuming that Petitioner could establish
that his correct sentencing range should have been even lower, this
would  not  necessarily  constitute  a  "complete  miscarriage  of
justice."  Courts have found that errors in calculating criminal
history or other factors that determine a sentencing range under
the Guidelines do not rise to the level of fundamental defects
cognizable in a § 2255 petition.  See Werber, 149 F.3d at 177 n.4
(declining to consider a petitioner's claim that the district court
had committed a legal error in interpreting the applicable criminal
statute,  resulting  in  a  failure  to  depart  downward  under  the

Guidelines); Pantin v. United States, No. 98 Civ. 7971 (DLC), 1999 WL 305095, at *2 (S.D.N.Y. May 14, 1999) ("Pantin's assertion that the Court miscalculated his Criminal History Category does not allege a complete miscarriage of justice."), reconsideration denied, No. 98 Civ. 7971 (DLC), 1999 WL 604641 (S.D.N.Y. Aug. 11, 1999); Simms v. United States, No. 95 Civ. 1089 (RJD), 1996 WL 362732, at *1 (E.D.N.Y. June 6, 1996) (finding that an alleged miscalculation of criminal history did "not rise to the level of a constitutional violation" and could not be asserted for the first time in a § 2255 petition); see also Wisch, 275 F.3d at 625 (stating that claims of misapplication of the Guidelines are "not reviewable" on habeas corpus).

In any event, each of Petitioner's claims is meritless. As for his earlier state convictions, Petitioner suggests that they do not qualify for consideration upon sentencing, because they do not meet the "generic definitions" of felonies that may lead to enhanced punishment for subsequent crimes. (See Pet.'s Mem. at 12, 15-16.) However, the question of whether prior crimes fit generic categories such as "burglary" relates to statutory penalty enhancement, not the calculation of criminal history under the Guidelines.[4]  See, e.g., Taylor v. United States, 495 U.S. 575,

_____

[4] Petitioner also insists that his prior convictions cannot serve to trigger any statutory penalty enhancement. (See Pet.'s Mem. at 12, 14.) However, Petitioner's mandatory minimum sentence was not increased on the basis of any earlier crime. He received far less than the 20 years' imprisonment called for in

17

580, 110 S. Ct. 2143, 2149 (1990) (evaluating whether prior crimes fit generic definitions of crimes for statutory penalty enhancement); Ruiz-Morales v. Ashcroft, 361 F.3d 1219, 1221-22 (9th Cir. 2004) (same). The Guidelines do not require consideration of whether Petitioner's earlier convictions fit any generic definition of a category of crime. They award prior criminal history points for every "prior sentence of imprisonment," U.S.S.G. § 4A1.1, which means "any sentence previously imposed upon adjudication of guilt," id. § 4A1.2, as well as for committing an offense while on probation, id. § 4A1.1 (f). The Guidelines thus allocate points on the basis of punishments previously received, not the substance of earlier offenses. The one exception is § 4A1.1(f), which adds criminal history points for convictions of "crime[s] of violence," but Petitioner was not given any points under that section. Rather, the Probation Office and the District Court properly considered the sentences arising from Petitioner's prior drug offenses, and for violating his probation. (See PSR ¶¶ 54-67.) Recognizing penalties imposed for Petitioner's prior crimes was therefore in no way unwarranted.

As for the purported miscalculation of the quantity of drugs Petitioner possessed, he cites United States v. Salgado-Molina, 967

---

21 U.S.C. § 841, the statute under which he was convicted, for violations committed "after a prior violation for a felony drug offense has become final." Id. § 841(b)(1)(A). Petitioner's complaint is therefore misplaced, and provides no basis for relief.

18

F.2d 27 (2d Cir. 1992), for the proposition that courts should exclude from consideration any unuseable portion of a mixture containing drugs. The defendant in Salgado-Molina had disguised cocaine in what appeared to be bottles of liqueur. The cocaine "was neither usable nor ingestible without a chemical extraction process." Id. at 29. Thus, the "liquid waste" byproduct of extraction was "the functional equivalent of packaging material." Id. (citation omitted). Under the Guidelines, it should not have been weighed along with the cocaine itself. However, unlike the drugs at issue in Salgado-Molina, there is no indication that Petitioner's heroin contained a chemical additive that made it unusable prior to an extraction process. Rather, heroin is generally cut with fillers, which the user ingests along with the active drug ingredient. Furthermore, Petitioner admitted during the plea hearing that he conspired to sell one kilogram of heroin, not an unusable mixture of heroin and other chemicals. (See Tr. 1 at 13-14.) Salgado-Molina therefore creates no basis for attacking Petitioner's sentence.

Finally, Petitioner does not identify what "objectives" of the Guidelines his sentence violates. As explained below, the District Court properly accounted for the objectives to be considered in sentencing under 18 U.S.C. § 3553(a), which supersedes the Guidelines. The District Court's balancing of statutory factors therefore cannot have given rise to any misapplication of

19

objectives espoused in the Guidelines that may be actionable under § 2255.

For the foregoing reasons, each of Petitioner's claims asserting error under the Guidelines should be rejected.

2.    Statutory and Constitutional Claims

Petitioner asserts three additional claims. First, he argues that the Guidelines are unconstitutional to the extent that they authorize consideration of prior convictions without requiring proof of the facts of such convictions to a jury beyond a reasonable doubt.[5]  (See Pet.'s Mem. at 14-16.)  Second, he argues that his punishment clashes with the sentencing considerations codified in 18 U.S.C. § 3553(a).  This claim boils down to an argument that he should not be punished as severely as other defendants who violate the drug trafficking statutes because he is "just an addict."  (Pet.'s Mem. at 18; see id. at 17-20.)  Third, he argues, in effect, that the only way to interpret § 3553(a) consistently with international law prohibiting discrimination is to ignore the Guidelines altogether.  (See id. at 21-27.)

Petitioner presented none of these claims on direct appeal. Thus, each is procedurally defaulted, and may not be considered by this Court absent a showing of cause and prejudice, or that a

---

[5] Petitioner aims the same challenge at statutory penalty enhancements.  (See Pet.'s Mem. at 14-16.)  Leaving aside the merits of his claim, as explained supra, it is misplaced because Petitioner did not receive a higher mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) on the basis of an earlier felony.

fundamental miscarriage of justice would otherwise occur.    In an attempt to establish cause, Petitioner points to the Supreme Court's decision in Booker, 543 U.S. 220, 125 S. Ct. 738, which held that the Guidelines are no longer binding.    (See Pet.'s Mem. at 4-7.)    Not only was that decision issued on January 12, 2005, before Petitioner was even sentenced, but he actually cited the case in a letter to the District Court prior to his sentencing hearing — albeit without explaining its relevance to his claims that the District Court failed to correctly apply the Guidelines. Booker therefore cannot serve as cause for Petitioner's default, because it did not create any claims that did not exist at the time of Petitioner's appeal.    Cf. United States v. Munoz, 143 F.3d 632, 635 (2d Cir. 1998) (considering whether a change in the law occurring after a petitioner's appeal could constitute cause for default).

Petitioner also attempts to sidestep the procedural bar on his claims by announcing that "eyewitness accounts in the form of affidavits to be presented" will show he is actually innocent. (Pet.'s Mem. at 7.)    He does not submit any such affidavits. "[A]iry generalities, conclusory assertions, and hearsay statements" cannot suffice to establish actual innocence.    United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987).    Petitioner's unsupported assertion that unnamed witnesses can prove his innocence thus fails to excuse his default.

21

In any event, even if they were not defaulted, Petitioner's claims would warrant no relief under § 2255. His attack on the constitutionality of accounting for criminal history under the Guidelines is frivolous. The Supreme Court has reaffirmed numerous times that recidivism may be considered in sentencing, and that the Sixth Amendment does not require proof of the facts of prior convictions to a jury beyond a reasonable doubt. See Almendarez-Torres v. United States, 523 U.S. 224, 239-40, 118 S. Ct. 1219, 1228-29 (1998); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348 (2000); Booker, 543 U.S. at 244, 125 S. Ct. at 756. "[T]hat recidivism is a sentencing factor rather than an element of the crime, remains good law, and it is not within the purview of the Courts of Appeals," let alone this Court, "to anticipate whether the Supreme Court may one day overrule its existing precedent." United States v. Estrada, 428 F.3d 387, 390 (2d Cir. 2005) (citing United States v. Santiago, 268 F.3d 151, 155 & n. 6 (2d Cir. 2001); see Cuevas v. United States, No. 07 Civ. 10635 (NRB), 2008 WL 2117597, at *4 (S.D.N.Y. May 15, 2008) (rejecting claim in § 2255 petition that Almendarez-Torres was wrongly decided).

Likewise, Petitioner's objections to the supposed misapplication of the considerations and objectives of § 3553(a) do not give rise to constitutional claims or any fundamental defect warranting relief under § 2255. "An allegation that a sentencing

22

judge failed to take into consideration all relevant statutory factors [under § 3553(a)] falls far short of a fundamental defect in the proceedings sufficient to support section 2255 relief." Miller v. United States, Civ. No. 07-983, 2008 WL 4820776, at *7 (W.D.Mich. Nov. 5, 2008); see Gordils v. United States, 943 F. Supp. 346, 355 (S.D.N.Y. 1996) ("Non-constitutional errors of law, including sentencing errors, do not provide a basis for collateral attack [absent a] fundamental miscarriage of justice. . . . [S]entencing errors generally are not cognizable on habeas corpus.") (internal quotation marks and alterations omitted). Furthermore, while Petitioner may believe that his culpability is low compared to his co-defendants and other drug traffickers, given his indigence and addiction, this does not give rise to a constitutional claim. See United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) ("Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants."). Regardless, the record shows that the District Court properly balanced the appropriate factors under § 3553(a), taking into account Petitioner's continual involvement in criminal activity since entering the United States, but also the circumstances of his parole violation. (See Tr. 2 at 25-26.) The District Court therefore imposed a sentence at the low end of Petitioner's range under the Guidelines. Based on the District

23

Court's determination, Petitioner cannot even establish any abuse of discretion under § 3553(a), let alone a "fundamental defect" in his sentence.

Petitioner's third claim is unavailing as well.  He submits that the International Covenant of Civil and Political Rights (the "ICCPR"), which the United States ratified on September 8, 1992, should constrain the Court's interpretation of § 3553(a).   In effect, Petitioner proposes that anti-discrimination provisions of the ICCPR would somehow surpass United States constitutional and statutory prohibitions on discrimination, and would require ignoring the Sentencing Guidelines altogether.  Leaving the dubious merits of that argument aside, it is "clear that the ICCPR is not binding on federal courts," because it is a "non-self executing agreement" and therefore lacks the force of law.  Hain v. Gibson, 287 F.3d 1224, 1243 (10th Cir. 2002) (citations and internal quotation marks omitted).  The ICCPR thus cannot create grounds for habeas relief.  See id. (denying habeas corpus to state petitioner who argued that the ICCPR prevented execution of prisoners who were minors at the time of their crimes).  Furthermore, the supposed failure to interpret a statute consistently with international law does not give rise to any constitutional violation or other fundamental defect.  Cf. Underwood v. United States, 166 F.3d 84, 87 n.2 (1999) (observing that because the "statutory interpretation" offered by a Supreme Court case the petitioner

24

cited was "not constitutional," it did not provide the basis for overcoming a defaulted § 2255 claim).

Petitioner's claims thus do not qualify for relief on collateral review, and each should be rejected.

## II. Ineffective Assistance of Counsel Claim

### A. Legal Standard

"A defendant is generally permitted to raise an ineffective assistance claim in a collateral attack, even when the claim was not raised on direct appeal." Amiel v. United States, 209 F.3d 195, 198 (2d Cir. 2000). In order to establish that his Sixth Amendment right to effective assistance of counsel has been violated, a petitioner must satisfy the familiar two-part test under Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064-65 (1984). See Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir. 2005); Lanfranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002). A petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance of counsel prejudiced the defense. See Henry, 409 F.3d at 63 (quoting Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2052).

Under the prejudice prong of the Strickland test, a habeas petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In order to satisfy the Strickland test,

25

Petitioner must meet the standards of both components. However, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

B.   Application to Petitioner's Claim

Petitioner asserts that he received ineffective assistance of counsel because his lawyer failed to secure competent services for translating between English and Spanish so that he could participate in the proceedings before the District Court. (See Pet.'s Mem. at 20.)   However, he does not identify what documents or proceedings, if any, he was unable to understand.   The Court acknowledges the difficulty of expecting a pro-se litigant whose first language is not English to explain flaws in the translation of legal proceedings conducted in English.   Yet, it cannot grant habeas relief on the basis of speculation.   Without pointing to specific translation errors, or other evidence that he could not understand the proceedings, Petitioner cannot carry his burden under Strickland to show that counsel's alleged failure to assure accurate translation prejudiced his defense.   Carvajal v. Artus, No. 07 Civ. 10634 (CM) (AJP), 2008 WL 4555531, at *37 (S.D.N.Y. Oct. 10, 2008) (finding that because a petitioner had not "pointed to a single conversation that was translated incorrectly," he could "not establish that he suffered prejudice from counsel's failure to

26

hire a translator") (citing United States v. Montilla, 85 Fed. Appx. 227, 230 (2d Cir. 2003) (affirming the denial of habeas relief based on ineffective assistance claim for failure to procure accurate translation where the petitioner did not identify translation errors)); see also Lamberti v. United States, No. 95 Civ. 1557 (PNL), 1998 WL 118172, at *1 (S.D.N.Y. Mar. 13, 1998) (finding that a § 2255 petitioner could not establish prejudice for failing to consider a defaulted inaccurate translation claim because he had "not specified what were the alleged inaccuracies of translation or shown how he was prejudiced by them"). Nor does Petitioner explain how the unspecified faulty translation resulted from his counsel's deficient performance.

Moreover, Petitioner cites no objections made before the District Court as to the adequacy of the translation from English to Spanish, or vise versa, at any time. In fact, at least part of the record provides evidence that the proceedings before the District Court were soundly translated. At the plea hearing, the Court inquired of Petitioner, "Can you understand the interpreter clearly?" and he responded "Yes." (Tr. 1 at 3.) The Court similarly asked the interpreter whether she could understand Petitioner, and the interpreter responded affirmatively. (See id.) Petitioner stated that he had reviewed the indictment with his attorney and that he understood the charges against him. (See id. at 8.) In sum, there is no reason to speculate that Petitioner's

27

trial counsel failed to ensure that any proceedings, evidence, or instruments related to his case were accurately translated.

For each of these reasons, Petitioner's ineffectiveness claim should be rejected.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that each of the claims in the Petition should be denied, and that this action should therefore be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). The Court further recommends that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (d) (2008). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, and to the chambers of the undersigned, Room 1660.

Any requests for an extension of time for filing objections must be directed to Judge Daniels.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 145, 155, 106 S. Ct. 466, 470, 475 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: August 19, 2009
New York, New York


Copies mailed this date to:

Jose Casteneda
52743-054
USP Victorville
P.O. Box 5500
Adelanto, CA 92301

Randall Jackson, Esq.
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007